IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GINA WALKER, DAVID FLEMING, and MYRNA FLEMING,<br><br>Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, MARK ENGDAHL, and DOES 1-10,<br><br>Defendants. | CV 20-97-BLG-SPW<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS |

Before the Court are U.S. Magistrate Judge Cavan's Findings and Recommendations (Doc. 24) on a Motion to Remand filed by Plaintiffs Gina Walker, David Fleming, and Myrna Fleming (Doc. 12). Defendants BNSF Railway Company, Mark Engdahl, and Does 1-10 timely lodged an objection (Doc. 25), to which Plaintiffs responded (Doc. 26). For the following reasons, Judge Cavan's Findings and Recommendations are adopted in full and the matter shall be remanded to Montana State District Court.

I.   **Background**

Plaintiffs are seeking remand of their case back to Montana State District Court. (Doc 12). This matter was originally filed in the Montana Thirteenth Judicial District when BNSF, a Delaware corporation with its principle place of

1

business in Texas, removed it to federal court based on diversity jurisdiction. (Doc. 1). In the Amended Complaint, Plaintiff Walker, a California resident, added the Flemings, who are both Montana residents, as co-plaintiffs. (Doc. 5). Defendant Engdahl is a citizen and resident of Montana. (Doc. 5). Plaintiffs plead eight causes of action against BNSF and Engdahl, alleging that BNSF discharged pollutants into the ground and groundwater and further alleging that Engdahl, in his capacity as BNSF's manager of environmental remediation, committed torts relating to the clean up of those pollutants on their property. (Doc. 5).

Plaintiffs assert that remand is appropriate because complete diversity is lacking as the Flemings and Engdahl are all Montana residents. (Doc. 12). Defendants alleged in response that Engdahl was fraudulently joined in the action and consequently the Court should disregard his status, making federal jurisdiction proper. (Doc. 5). Judge Cavan agreed with the Plaintiffs and determined that Defendants failed to meet their burden to demonstrate by clear and convincing evidence that Engdahl could not be liable on any theory. Judge Cavan therefore recommended that the matter be remanded. (Doc. 24 at 15).

Judge Cavan first determined that, under Montana law, employees are liable for tortious conduct committed within the scope of their employment and identified that several of Plaintiffs' claims sought to hold Engdahl personally liable for torts. (Doc. 24 at 5-6). Using this standard, Judge Cavan determined that, so long as the

2

Plaintiffs have made colorable claims that could possibly allow the Plaintiffs to recover against Engdahl, fraudulent joinder has not occurred. (Doc. 24 at 7). Judge Cavan then addressed each count in turn, ultimately concluding that Plaintiffs had colorable claims against Engdahl for nuisance—based on his alleged decision to consciously abstain from cleaning up pollutants which migrated to Plaintiffs' property—and for trespass—based on the aforementioned abstention as well as Engdahl's alleged intrusion onto the bed and banks of the river on Plaintiffs' property. (Doc. 24 at 9-10). Judge Cavan also determined that Plaintiffs asserted a colorable claim for constructive fraud against Engdahl for his alleged failure to disclose the extent of the pollution as well as the adverse health risks posed by exposure to the pollutants and hazardous materials. (Doc. 24 at 14).

Defendants timely objected. (Doc. 25). They asserted that Judge Cavan wrongly determined that Engdahl could be liable for torts committed within the scope of his employment. (Doc. 25 at 4). Defendants also objected to the findings that Plaintiffs have asserted colorable nuisance and trespass claims against Engdahl. (Doc. 25 at 4 and 6). In support of their objections, Defendants ask the Court to consider the Plaintiffs' deposition testimony, which was unavailable to Judge Cavan because the depositions had yet to occur. (Doc. 25 at 2). The Court will consider this evidence.

**II.  Legal Standards**

3

### A. Standard of Review

Litigants are entitled to *de novo* review of those findings or recommendations to which they object. 28 U.S.C. § 636(b)(1). When neither party objects, this Court reviews a Magistrate's Findings and Recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). A party makes a proper objection "by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority such that the district court is able to identify the issues and the reasons supporting a contrary result. *Lance v. Salmonson*, 2018 WL 4335526 at *1 (D. Mont. Sept. 11, 2018). A district court, when conducting review of a magistrate's recommendations, may consider evidence presented for the first time in a party's objections, but it is not required to. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

### B. Removal

A defendant may remove a case to federal court if the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). There are two grounds for federal original jurisdiction. First, federal courts have original jurisdiction if there is complete diversity among the parties and the amount in controversy is at least $75,000. 28 U.S.C. § 1332(a). Complete diversity means that "each of the plaintiffs must be a citizen of a different state than each of the defendants." *Morris*

v. *Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Second, federal courts have original jurisdiction if the action arises under federal law. 28 U.S.C. § 1331. The defendant has the burden of overcoming a strong presumption against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Any doubt should be resolved in favor of remand to the state court. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

### C. Fraudulent Joinder

Fraudulent joinder is a term of art. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.* Fraudulent joinder only occurs when "a plaintiff has no possibility of bringing a cause of action against a resident defendant, and therefore has no reasonable grounds to believe he has such an action." *IDS Prop. Cas. Ins. Co. v. Gambrell*, 913 F. Supp. 2d 748, 752 (D. Ariz. 2012).

If the resident defendant's joinder was fraudulent, then that defendant's presence is ignored for purposes of determining diversity. *Morris*, 236 F.3d at 1067. While the defendant may present summary judgment type evidence to show fraudulent joinder, the "inquiry is far different from the summary judgment type inquiry." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990).

Instead, the inquiry is akin to an analysis made in a Fed. R. Civ. P. 12(b)(6) motion to dismiss as to what those materials may be admitted to prove. *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975). Thus, this Court may only "look to material outside the pleadings for the limited purpose of determining whether there are undisputed facts that negate the claim." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (internal quotation omitted). However, the test for fraudulent joinder and for failure to state a claim are not equivalent. *Grancare, LLC v. Thrower*, 889 F.3d 543, 549 (9th Cir. 2018). "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* Instead, looking at the merits of the claim, the fraudulent joinder inquiry most resembles a Rule 12(b)(1) jurisdictional issue. *Id.*

The defendant bears the burden of showing fraudulent joinder by clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Any contradictory evidence should be resolved in favor of the plaintiff. *Anderson v. BNSF Ry. Co.*, No. CV 08-14-H-DWM, 2008 WL 5412454, at *2 (D. Mont. May 21, 2008). "In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in

the state court." *Albi v. Street & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944).

### III. Analysis

Defendants object to Judge Cavan's recommendation that the motion to remand should be granted as well as his underlying findings that Plaintiffs stated colorable claims for nuisance, trespass, and constructive fraud against Engdahl. (Doc. 25 at 2). Defendants assert that Engdahl cannot be held liable for either public or private nuisance because Plaintiffs do not allege he created the conditions that caused the alleged nuisance and do not allege facts that would impose a duty upon Engdahl in his personal capacity to abate any nuisance. To hold Engdahl responsible, Defendants say, would "turn the basic principles of agency on their head and allow Plaintiffs to hold Mr. Engdahl vicariously liable for his employer's alleged wrongful conduct." (Doc. 25 at 6). Defendants contend that Engdahl cannot be held liable for trespass because he did not personally cause the alleged contamination, he was under no "personal duty" to remove alleged contaminants, and that the claims based on a physical intrusion are "false" because—as demonstrated by Engdahl's sworn affidavit and Walker's deposition testimony—Walker said it was "okay" for BNSF and Engdahl to enter her property. (Doc. 25 at 7-10). Finally, Defendants assert that Plaintiffs do not allege any facts that would impose a duty on Engdahl in his personal capacity to make any

7

representations to Plaintiffs and therefore Plaintiffs have not asserted a colorable fraud claim. (Doc. 25 at 11).

Generally speaking, under Montana law employees cannot be personally liable for acts taken on behalf of a corporation. *Sherner v. Nat'l Loss Control Servs. Corp.*, 124 P.3d 150, 155 (Mont. 2005). However, there is an exception if the employee commits a tort within the scope of employment. *Anderson*, at *1. To hold the employee personally liable, the employee must be either personally negligent or have taken "actions that were tortious in nature." *Crystal Springs Trout Co. v. First State Bank of Froid*, 732 P.2d 819, 823 (Mont. 1987). Where "there are allegations against an employee personally, the Montana Supreme Court has allowed the employee to be named as a defendant." *Caven v. Burlington N. & Santa Fe Ry. Co.*, No. CV 04-41-GF-SEH, 2004 WL 5704818, at *1 (D. Mont. Sept. 20, 2004) (citing *Dagel v. City of Great Falls,* 819 P.2d 186, 195 (Mont.1991)). "A person who assumes to act as an agent is responsible to third persons as a principal for acts in the course of the agency . . . when the agent's acts are wrongful in their nature." Mont. Code Ann. § 28-10-702 (2019). Judge Cavan correctly noted that the Court has explained this exception to BNSF on at least four other occasions when BNSF raised similar allegations of fraudulent joinder. (*See* Doc. 24 at 6).

8

Defendants insist that Engdahl cannot be held liable for nuisance because he neither created the nuisance nor was under a duty to abate BNSF's alleged nuisance. This insistence is insufficient to meet Defendants' burden of demonstrating, by clear and convincing evidence, that Plaintiffs have no possibility of bringing a cause of action against Engdahl, a resident defendant, and therefore no reasonable grounds to believe they have such an action. Plaintiffs claim that BNSF and Engdahl dumped pollutants that specifically injured them and then failed to clean up that pollution. (Doc. 4 at 8, ¶¶ 27 & 28). It is conceivable that Engdahl, as BNSF's manager of environmental remediation, acted in that capacity for BNSF in failing to abate the alleged nuisance. Whether or not allegations underlying the nuisance claim are "speculative"—as BNSF asserts the deposition testimony demonstrates—an allegation that BNSF, in part through Engdahl's alleged failure to clean up the pollutants, failed to abate the nuisance created by the pollutants is sufficient to survive Defendants' contention that Engdahl was fraudulently joined. Defendants have not demonstrated that there is no possibility that Engdahl could be held liable for tortious conduct committed within the scope of his employment. Judge Cavan was correct in determining that Plaintiffs sufficiently alleged the tort of nuisance against Engdahl to defeat a claim of fraudulent joinder.

The same is true for Plaintiffs' trespass claims against Engdahl. One portion of their trespass claim is predicated on the same grounds as the nuisance claims—namely the intrusion of toxic and hazardous materials released onto Plaintiffs' property and the continuing alleged failure to remedy that intrusion. (*See* Doc. 5 at 12, ¶ 41). Therefore, the same analysis and result applies as to Engdahl's potential liability and consequent defeat of the fraudulent joinder claim. Plaintiffs further allege intentional trespass against Engdahl for entering Walker's property without permission. (Doc. 5 at 12, ¶ 42). Defendants assert that, in her deposition, Walker said it was "okay" for BNSF and Engdahl to enter her property and that her statement objectively demonstrates that Defendants did not trespass. (Doc. 25 at 10). Plaintiffs contend that Defendants are misrepresenting Walker's testimony and that Walker did not believe she was giving permission and was instead responding to Engdahl's assertion that he was going to enter the property. (Doc. 26 at 6). Plaintiffs also contend that Engdahl had entered the property prior to any of the conversations with Walker. (Doc. 26 at 7). This conflicting evidence establishes that there is a colorable claim against Engdahl for trespassing and Defendants have not met their burden to prevent remand.

Lastly, Defendants object to Judge Cavan's finding that Plaintiffs asserted a colorable claim of constructive fraud and contend that Engdahl did not have a duty in his personal capacity to provide Plaintiffs with warnings or information about

10

contamination and associated health risks. (Doc. 25 at 12). Defendants point toward Walker's deposition testimony that she did not feel that Engdahl had lied to her or that she had relied on any representations he had made. (Doc. 25 at 13). Defendants also cite the Flemings' deposition testimony where they admit to never having met Engdahl. (Doc. 25 at 16). Plaintiffs' Amended Complaint alleges misrepresentations resulting in an unfair advantage over Plaintiffs to their prejudice stemming from Defendants, including Engdahl, failing to fully disclose the type and scope of contamination and the health risks posed by toxic and hazardous substances and materials. (Doc. 5 at 13, ¶ 49). Plaintiffs cite Walker's deposition testimony to show that she felt that Engdahl had not told her "the full truth in what was going on" about the potential contamination and that Engdahl and BNSF failed to keep her fully informed. (Doc. 26 at 7). Bearing in mind that contradictory evidence and doubts should be resolved in the plaintiffs' favor and against a finding of fraudulent joiner—as explained in Section II.C, *supra*—the Court cannot say that Judge Cavan erred in finding that Plaintiffs asserted a colorable claim for constructive fraud against Engdahl. Engdahl, as the manager of environmental remediation, potentially concealed and then benefitted from non-disclosure of material facts. Engdahl need not have personally benefited from the alleged misrepresentations or been under a personal duty—so long as he undertook potentially tortious acts on behalf of BNSF, Plaintiffs have asserted a colorable

11

claim. Defendants have failed to meet their burden in demonstrating that Engdahl was fraudulently joined on this count, or any of the others.

## IV. Conclusion

Plaintiffs alleged multiple individual claims against Engdahl and Defendants have failed to demonstrate that any of these claims are added for the purpose of fraudulently avoiding diversity jurisdiction. Any one of the counts analyzed above alone would be sufficient to destroy diversity. Because the Court lacks federal jurisdiction, the matter must be remanded to the state court. Accordingly:

IT IS HEREBY ORDERED:

1. Magistrate Judge Cavan's Findings and Recommendations are ADOPTED in full;

2. Plaintiffs' Motion to Remand (Doc. 12) is GRANTED;

3. The Clerk of Court shall REMAND this case to the Montana Thirteenth Judicial District Court, Yellowstone County.

DATED this 29th day of March 2021.

SUSAN P. WATTERS
United States District Judge